38226. EMPLOYERS LIABILITY ASSURANCE CORPORATION, LTD. *v.* LEWIS *et al.*, Commissioners.

DECIDED JUNE 8, 1960.

*Martin, Snow, Grant & Napier,* for plaintiff in error.
*H. Dale Thompson, R. M. Daley,* contra.

FELTON, Chief Judge. ■ It is first contended that the trial court erred in holding the plaintiff surety company liable for commissions illegally withheld by the tax commissioner for the year 1953. The plaintiff urges that this claim against it is barred by the statute of limitations applicable in this instance. "Code § 89-832 fixes the statute of limitations at 6 years from the date a cause of action arises, as against the tax collector or tax commissioner, and 3 years from the date a cause of action accrues, as against the surety on his official bond. *United States Fidelity &c. Co.* v. *Toombs County*, 187 *Ga.* 544 (1 S. E. 2d 411)." *Laurens County* v. *Keen*, 214 *Ga.* 32, 38, supra.

The petition alleges and the answer admits that the plaintiff had signed as surety certain official bonds of T. C. Keen as tax commissioner and that "said bonds are in conformity with the Georgia Law relating to official bonds for tax collectors or tax commissioners." Code § 89-806 sets forth certain bonding requirements applicable to the office of tax commissioner: "The State authorities shall require of all collecting officers and all officers to hold public money, so far as relates to moneys or revenues of the State, to give, on or before entering on the duties of their office, appointment, or employment, bond with good security for the faithful performance of the duties of their office and faithfully to account for all moneys coming into their hands, together with such other conditions as the laws may require as to the official bond of the particular officer in question. . ."

The duties of the tax commissioner with regard to accounting for taxes are set forth in Code § 89-827: "Annually on or before April 20, unless the time shall be extended by the Comptroller General for cause which said Comptroller General shall deem to be sufficient, each tax collector shall make and file an accounting with the Comptroller General as to State taxes, and with the county authority of his county as to county taxes, for the preceding year, in which the accounts of said tax collector shall be fully stated, and uncollected items on the digest of such preceding year shall be listed in detail. . . If the Comptroller General or the county authority, as the case may be, shall find that all collections made to the date of the accounting have been

properly accounted for by the tax collector, an order to that effect shall be entered by the Comptroller General or the county authority, as the case may be; but if it appear that there is any default in accounting for collections made, the tax collector and his sureties shall be promptly cited, as in this law provided for, to make good such default." For sufficient cause, the Comptroller General may allow an extension of time for such accounting not exceeding 4 months. Code §§ 89-827, 89-828.

The plaintiff's contention is that as to its liability as surety for the 1953 taxes, the three-year statute of limitations began to run on April 20, 1954, the date fixed by statute for accounting, and action against it was therefore barred by the time the execution was issued on May 21, 1957. On the other hand the defendants argue that there was no illegal withholding of any commissions until the time of actual filing of the tax commissioner's report on June 11, 1954, and the statute would begin to run from that date. In *United States Fidelity &c. Co.* v. *Toombs County,* 187 *Ga.* 544 (7), supra, the Supreme Court, in considering the liability of a collecting officer for moneys with which he is charged and which are due the county, rejected the contention that the statute of limitations does not begin to run against the county until the actual default by the officer becomes known, and held: "Ordinarily a right of action has its inception from the time there has been a breach of duty. When, however, the basis of the action is actual fraud involving moral turpitude, the statute of limitation is tolled, and does not begin to run until such fraud is discovered, or could have been discovered by the exercise of ordinary and reasonable diligence." In *Keen* v. *Lewis,* 215 *Ga.* 166, 171, supra, the Supreme Court, considering the same transaction now before us, held that under the pleadings and evidence there involved, there was no question but that the amount of commissions for 1953 was claimed by the tax commissioner in good faith. In the present case there is no contention that the basis of the action is actual fraud and consequently the general rule applies. The cause of action therefore had its inception and the statute of limitations began to run from the time there was a breach of duty on the part of the tax commissioner.

The Supreme Court in *Century Indemnity Co.* v. *Fidelity &c. Co.*, 175 *Ga.* 834 (166 S. E. 235) held that no defalcation by a county treasurer occurred until it became his official duty to pay over the funds held by him as treasurer. Applying this principle to the facts of the present case, the tax commissioner had not filed a report or made an accounting for 1953 taxes on or before April 20, 1954, as required by Code § 89-827. It is apparent that these failures constituted a breach of his official duty for which he and the surety on his official bond would both be liable. Accordingly, a cause of action in this matter accrued on April 20, 1954, and the execution issued on May 21, 1957, was barred by the statute of limitations to the extent that it sought to enforce liability against the surety for amounts withheld for 1953. We are not concerned here with the effect of an extension of time by the Comptroller General, as no such extension was sought or granted in this case. The superior court erred in declaring the plaintiff surety liable on the bond of the tax commissioner for the year 1953.

■ The next question for decision is whether interest on the principal amount was properly charged from the date of issuance of execution, May 21, 1957. Code § 89-833 provides: "Upon breaches of the bond of any officer, bank, or depository, interest shall run against the principal on the bond at the rate of seven per cent. per annum from the date of the breach, and against the surety at the same rate from the date of the demand on the surety. . . Provisions of existing law imposing higher rates of interest or penalties upon principals or sureties upon any of such bonds are superseded by the provisions of this section." The provisions of this section as to interest supersede those of Code § 92-5504 providing for interest at the rate of 20 percent per annum on the principal amount against the tax collector and his sureties.

The defendants contend that the issuance of the execution against the principal and the surety and its recording on the execution docket constituted a demand within the meaning of this law. In *Massachusetts Bonding & Ins. Co.* v. *Board of Commissioners &c.*, 172 *Ga.* 409 (2) (157 S. E. 459) the Supreme Court held: "Where a defalcation occurs in the office of

a county treasurer, the statutory interest of 20 percent per annum, specified in the Civil Code, § 1187 [Code § 92-5504], to be charged against the treasurer and the surety on his bond, should be calculated from the date of demand for payment or the equivalent of demand such as the issuance of execution and the like, and not from the date of defalcation where no such demand is made at that time." While this language indicates that issuance of execution may amount to a sufficient demand, a closer reading of the opinion discloses that the surety had tendered to the county the full amount of principal together with interest thereon from the date of the execution and the only point actually adjudicated in this case was that the statutory interest did not run from the date of defalcation.

A more analogous situation is found in *Frink* v. *Southern Exp. Co.*, 82 *Ga.* 33 (5) (8 S. E. 862, 3 L. R. A. 482): "When no demand has been made, the plaintiff is entitled to interest only from the time the writ was served on the defendants. Interest having been calculated by the jury from the time the money was lost to the date of the verdict, it is directed that the interest found up to the service of the writ be written off, and that interest be calculated from the time of the service to the judgment." It is highly significant that the Supreme Court in this case did not allow interest to run against the surety from the date suit was filed, but expressly limited the commencement of such interest to the date of service of process on the defendant. This decision is in accord with the general rule as stated in Stearns' Law of Suretyship (5th Ed.) p. 283, § 8.19: "Where demand is necessary, a surety upon a bond is liable for interest upon the damages ascertained from the date of the demand. If no demand is made, interest may be recovered from the date of service upon the surety in the action upon the bond."

Code § 89-833 requires a demand on the surety to initiate the running of interest against it but does not prescribe a specific form of demand. In the absence of specific statutory or contractual requirement it is only necessary to constitute a demand that the surety be notified that immediate payment of the debt is requested. See 47 C. J. S. 58, "Interest", § 46b.

There is no requirement here of demand on the principal to initiate the running of interest against him, and the evident purpose of the statutory requirement of demand on the surety is to give such surety an opportunity to immediately reimburse the county for any loss within the terms of the bond occassioned by the breach of the principal, without subjecting it to the payment of interest prior to the time the county notifies it that immediate payment of such obligation is requested.

In the present case, there was no such notification of the surety constituting an actual demand for payment by the county, and we do not think that simply issuing the execution and recording it on the execution docket was sufficient to constitute the demand on the surety which the statute requires. This conclusion is not altered by the fact that a representative from the bonding company was present as an observer at the meeting of the county commissioners on May 21, 1957, when it was voted to issue execution "against T. C. Keen, Sr., tax collector and his bonding company." In the absence of an actual demand, there is nothing in any of these proceedings on the part of the commissioners which is remotely equivalent to the service of process in a pending action against the surety so as to bring this case within the principle of *Frink* v. *Southern Exp. Co.*, 82 *Ga.* 33, supra. The court therefore erred in declaring that interest on the principal sum should run from the date of execution issued by Laurens County on May 21, 1957.

■ The other question involved in this case is whether or not illegally withheld commissions for the year 1956 are covered by the bond for the term 1953-56, or by the bond for the term 1957-60. T. C. Keen was re-elected tax commissioner in 1956 and began his new term of office on January 1, 1957.

In *Century Indemnity Co.* v. *Fidelity &c. Co.*, 175 *Ga.* 834, supra, the Supreme Court considered the question of liability between two sureties on the bonds of a county treasurer who had succeeded himself in office and held that the liability is against the company which was surety during the term within which default occurred. Since, as we observed in division 1 of this opinion, the default occurs when the officer fails to produce and pay over the funds as required by law and since Code

§ 89-827 requires a tax collector annually on or before April 20th to make and file an accounting with the county authority as to county taxes for the preceding year, the withholding of taxes for 1956 was not complete until the provisions of this section were violated by failing to account in 1957. Accordingly, the court did not err in holding plaintiff liable under its 1957-60 bond for illegally withheld commissions for the year 1956.

The judgment of the superior court is reversed to the extent that it declares the plaintiff liable as surety on the bond of T. C. Keen for the year 1953, and to the further extent that it provides for the running of interest against the plaintiff prior to September 4, 1957, on any execution issued against it in this matter by Laurens County. The said judgment is affirmed in all other respects.

*Judgment affirmed in part and reversed in part. Nichols and Bell, JJ., concur.*